IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MACRINA JEAN FRIERSON, | ) | CIVIL NO. 16-00397 KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER AFFIRMING THE DECISION OF |
| vs. | ) | THE ADMINISTRATIVE LAW JUDGE |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

Plaintiff Macrina Jean Frierson ("Plaintiff") appeals
the Administrative Law Judge's ("ALJ") determination that she is
not disabled.  She asks this Court to reverse the ALJ's decision
and find her disabled as of March 25, 2012.  Oral arguments were
held on September 6, 2017.  Danielle Beaver, Esq., appeared on
behalf of Plaintiff.  Special Assistant U.S. Attorney Asim Modi
appeared by telephone and Assistant U.S. Attorney Edric Ching
appeared on behalf of Defendant Nancy Berryhill ("Commissioner").

After careful consideration of the parties'
submissions, the record, the applicable law, and the arguments of
counsel, the Court HEREBY AFFIRMS the ALJ's Decision for the
reasons set forth below.

<u>ADMINISTRATIVE PROCEEDINGS</u>

On March 14, 2012, Plaintiff filed an application for
Disability Insurance Benefits ("DIB"), alleging a disability
onset date of March 25, 2012.[1]  The Social Security
Administration ("SSA") denied her application.

On August 11, 2014, the ALJ convened a hearing.

On October 31, 2014, the ALJ issued her Decision,
finding and concluding as follows:

- Plaintiff meets the insured status requirements of the
  Social Security Act through June 30, 2015.  Administrative
  Record ("AR") at 17.

- Plaintiff has not engaged in substantial gainful activity
  since March 25, 2012.  <u>Id.</u>

- Plaintiff's severe impairments include degenerative disc
  disease of the lumbar spine and diabetes mellitus.  <u>Id.</u> at
  18.

- Plaintiff does not have an impairment or combination of
  impairments that meet or medically equal the severity of one
  of the listed impairments in 20 C.F.R. Part 404, Subpart P,
  Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and
  404.1526).  <u>Id.</u> at 19.

- Plaintiff has the residual functional capacity to perform
  light work as defined in 20 C.F.R. § 404.1567(b)

      except that she is able to lift and/or carry 20
      pounds occasionally and 10 pounds frequently;
      stand and/or walk 6 hours in an 8-hour day with
      customary breaks; sit 6 hours in an 8-hour day
      with customary breaks; she would need to alternate
      positions between sitting and standing at 1-hour
      intervals for 1-5 minutes at the workstation;

---

[1]  Plaintiff initially alleged a disability onset date of
August 30, 2011, but amended the date to March 25, 2012.  AR at
15.

occasionally kneel, stoop, crawl, and crouch;
occasionally climb ramps and stairs; never climb
ladders, ropes, or scaffolds; she would have no
restrictions on the use of the upper extremities
for fine or gross manipulations or reaching in any
direction; she would need to avoid unprotected
height and dangerous moving machinery; she would
be able to sustain concentration and attention,
persistence and pace in two hour blocks of time to
complete a normal workday; she would be able to
interact and respond appropriately to coworkers,
supervisors, and the general public; and she would
be able to understand remember and carry out both
detailed and complex tasks.

Id.

- Plaintiff is capable of performing past relevant work as an
  administrative clerk, and such work does not require her to
  perform work-related activities precluded by her residual
  functional capacity.  Id. at 23.

- Plaintiff has not been under a disability.  Id. at 24.

On December 17, 2014, Plaintiff filed a Request for
Review of Hearing Decision/Order.  Id. at 7.  The ALJ's Decision
became the Commissioner's final decision when the Appeals Council
denied Plaintiff's Request on May 17, 2016.  Id. at 1-6.

## STANDARD OF REVIEW

The decision of the Commissioner must be affirmed if it
is supported by substantial evidence and the Commissioner applied
the correct legal standards.  Benton v. Barnhart, 331 F.3d 1030,
1035 (9th Cir. 2003).  "Substantial evidence means more than a
mere scintilla, but less than a preponderance.  It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion."  Trevizo v. Berryhill, 862 F.3d 987,

996 (9th Cir. 2017) (citation and quotation omitted); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007)). If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed. <u>Hiler v. Astrue</u>, 687 F.3d 1209, 1211 (9th Cir. 2012); <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."); <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1018 (9th Cir. 1992) ("If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."); <u>see</u> <u>also</u> <u>Burch</u>, 400 F.3d at 679. The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

Plaintiff appeals the ALJ's determination that she is not disabled.[2] She argues that she is unable to perform her past relevant work and asks this Court to find her disabled with an onset date of March 25, 2012.

To be eligible for disability insurance benefits, a claimant must demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, it may only be determined that a claimant is under a disability "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Only disabilities existing before the date last insured establish entitlement to disability insurance benefits. Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (citing Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

_____

[2] Plaintiff does not challenge the ALJ's determinations with respect to steps one through three.

5

A five-step analysis is employed in evaluating disability claims.

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

Burch, 400 F.3d at 679; 20 C.F.R. § 404.1520. It is the claimant's burden to prove a disability in steps one through four of the analysis. Burch, 400 F.3d at 679 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." Id. (citation omitted).

In conducting the relevant analysis, and as applicable to the instant appeal, the ALJ found that Plaintiff is able to perform past relevant work as an administrative clerk and that

she is not disabled.  AR at 23-24.  Plaintiff contends that it

was an abuse of discretion for the ALJ to express medical

opinions unsupported by the evidence and outside her area of

expertise in concluding that Plaintiff's condition was not

disabling.  Plaintiff additionally submits that the facts relied

upon by the ALJ do not support her determination that Plaintiff

was not credible.

A.   Credibility Determination

Plaintiff challenges the ALJ's conclusion that she was

not fully credible.  "Credibility determinations are the province

of the ALJ."  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989);

Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations

and quotations omitted) ("[Q]uestions of credibility and

resolutions of conflicts in the testimony are functions solely of

the Secretary."); Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.

2007).  When the ALJ makes specific findings justifying a

decision to disbelieve an allegation of excess pain, and those

findings are supported by substantial evidence in the record, it

is not the Court's role to second-guess that decision.  Fair, 885

F.2d at 604.  The Ninth Circuit has established a two-step

analysis for determining the extent to which a claimant's symptom

testimony must be credited:

> First, the ALJ must determine whether the claimant
> has presented objective medical evidence of an
> underlying impairment which could reasonably be
> expected to produce the pain or other symptoms

alleged.  In this analysis, the claimant is not
required to show that her impairment could
reasonably be expected to cause the severity of
the symptom she has alleged; she need only show
that it could reasonably have caused some degree
of the symptom.  Nor must a claimant produce
objective medical evidence of the pain or fatigue
itself, or the severity thereof.

If the claimant satisfies the first step of this
analysis, and there is no evidence of malingering,
the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering
specific, clear and convincing reasons for doing
so.  This is not an easy requirement to meet: The
clear and convincing standard is the most
demanding required in Social Security cases.

Trevizo, 862 F.3d at 1000 (quoting Garrison, 759 F.3d at 1014-

15); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)

(identifying two-step analysis in assessing the credibility of a

claimant's testimony regarding the subjective pain or intensity

of symptoms); Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir.

2009); Lingenfelter, 504 F.3d at 1036.  That said, the ALJ need

not "'believe every allegation of disabling pain, or else

disability benefits would be for the asking, a result plainly

contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina, 674 F.3d at 1112

(quoting Fair, 885 F.2d at 603).

Credibility determinations must be made with

sufficiently specific findings to allow the court to conclude

that the ALJ did not arbitrarily discredit a claimant's

testimony.  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)

(citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)

(en banc)).  The following factors are relevant in reviewing an

ALJ's credibility findings, and are also required by the SSA:

> (1) whether the claimant engages in daily
> activities inconsistent with the alleged symptoms;
> (2) whether the claimant takes medication or
> undergoes other treatment for the symptoms; (3)
> whether the claimant fails to follow, without
> adequate explanation, a prescribed course of
> treatment; and (4) whether the alleged symptoms
> are consistent with the medical evidence.

Lingenfelter, 504 F.3d at 1040; Orn, 495 F.3d at 636 (quoting

Fair, 885 F.2d at 603) (ALJs may consider the following factors

in weighing a claimant's credibility:  "reputation for

truthfulness, inconsistencies in testimony or between testimony

and conduct, daily activities, and 'unexplained, or inadequately

explained, failure to seek treatment or follow a prescribed

course of treatment'").

Here, the ALJ opined that Plaintiff met the first step,

but rejected her testimony about the severity of her symptoms,

and made no finding of malingering:  "After careful consideration

of the evidence, the undersigned finds that the claimant's

medically determinable impairments could reasonably be expected

to cause the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence and limiting effects of

these symptoms are not entirely credible for the reasons

explained in this decision."  AR at 21.  To reach this adverse

credibility determination, the ALJ was required to provide

specific, clear, and convincing reasons to discount the alleged

9

severity of Plaintiff's subjective symptoms and pain.  Trevizo,
862 F.3d at 1001 (citing Lingenfelter, 504 F.3d at 1036).  The
Court finds that she has.

The ALJ offered multiple reasons for not fully
crediting Plaintiff's testimony about the severity of her
symptoms.  First, she found Plaintiff's allegations of disabling
symptoms and limitations to be "inconsistent with the objective
medical evidence which indicates an attempt by [Plaintiff] to
exaggerate the severity of her symptoms."  AR at 20.  To wit,
Plaintiff did not receive medical treatment one would expect for
a totally disabled individual – more aggressive treatment,
surgical intervention, or a referral to a specialist.  Second,
the ALJ highlighted Plaintiff's ability to engage in "a somewhat
normal level of daily activity and interaction" which involves
the same abilities and interactions necessary for obtaining and
maintaining employment.  Id. at 20-21.  Third, the ALJ cited
persistent non-participation in conservative treatment – failure
to do exercise as frequently as she should, and failing to take
medications regularly as instructed – as weighing strongly
against Plaintiff's credibility.  Id. at 21.  Lastly, the ALJ
noted that Plaintiff worked after the alleged onset date.
Although the ALJ conceded that Plaintiff's work activity after
the onset date did not constitute disqualifying substantial
gainful activity, she determined that it reflected daily

activities that "have, at least at times, been somewhat greater than [Plaintiff] has generally reported." Id.

The Court addresses each in turn.

1. Medical Evidence

a. Course of Treatment

In determining that Plaintiff's "allegations concerning the intensity, persistence and limiting effects of her symptoms [we]re less than fully credible," the ALJ explained that said allegations were "inconsistent with the objective medical evidence which indicates an attempt by [Plaintiff] to exaggerate the severity of her symptoms." Id. at 20. Specifically, the ALJ held:

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The lack of more aggressive treatment, surgical intervention, or even a referral to a specialist suggests the claimant's symptoms and limitations were not as severe as she alleged. The credibility of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record.

Id. Plaintiff argues that the ALJ erred because her treating physician, Dr. Coswin Saito, is a physiatrist. A physiatrist is a specialist in an area of medicine relevant to assessing Plaintiff's condition. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Therefore, it was improper for the ALJ to rely on the lack of referral to a specialist as a basis for finding that

Plaintiff's medical treatment was unexpected for a totally disabled individual. However, this error is harmless and does not, by itself, undermine the ALJ's finding, which was also based on a lack of more aggressive treatment and surgical intervention. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (stating that error is harmless if it is inconsequential to the ultimate determination).

An ALJ may rely on "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" to find a pain allegation incredible. Fair, 885 F.2d at 603. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra, 481 F.3d at 751 (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (finding permissible the ALJ's inference that Tommasetti's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").

Plaintiff relies solely on Dr. Saito's February 12, 2016 Medical Questionnaire, characterized by Plaintiff as a "report", to contend that her condition could not be handled surgically and that more aggressive treatments were unavailable.[3] Even considering Dr. Saito's responses, the ALJ properly discredited Plaintiff's allegations of severe symptoms and limitations based on her conservative course of treatment.[4] Notably, this was one of multiple reasons cited as undercutting Plaintiff's credibility.

    b.    X-ray and MRI Findings

According to Plaintiff, the ALJ's determination that the x-ray and MRI findings were not objective documentation of Plaintiff's subjective complaints, without medical expert evidence, was improper.  It is Plaintiff's position that if radiographic findings were mild or normal, an ALJ could reasonably assume that objective findings were not significant, but if findings are not mild or normal, the ALJ lacks the medical knowledge to interpret the findings.  This argument is unfounded

---

[3] This questionnaire, presented to Dr. Saito by Plaintiff, did not contain any written findings by Dr. Saito; it was comprised of questions requiring "yes" or "no" responses.  AR at 705-06.

[4] As the Court will later discuss, Plaintiff did not even follow the prescribed course of conservative treatment.

and without legal support.[5]

Inexplicably, in the "relevant facts" section of her
Amended Opening Brief, Plaintiff states that the ALJ did not
comment on the objective x-ray and MRI findings.[6]  Am. Opening

---

[5]  Plaintiff has not cited a single legal authority for this
proposition.  Instead, she cites Day v. Weinberger, 522 F.2d
1154, 1156 (9th Cir. 1975), to argue that an ALJ is not entitled
to go outside the record to medical textbooks to aid in the
decision making process.  Plaintiff speculates that because the
ALJ made conclusions without medical opinions, she must have gone
outside the medical record.  This contention is meritless and the
inference illogical.  The hearing examiner in Day expressly noted
that the claimant "did not exhibit the physical manifestations of
prolonged pain that are listed in a leading medical textbook"
during her appearance at the hearing.  Id.  No such findings were
made here, express or otherwise.  The ALJ only discussed the
evidence in the record.

Plaintiff also cites Smith v. Colvin, No. CV 15-9799 JC,
2016 WL 4059627 (C.D. Cal. July 27, 2016), but her reliance is
misplaced.  Smith is neither binding nor persuasive.  The
plaintiff in Smith challenged the ALJ's rejection of an examining
physician's opinion.  Id. at *3.  This appeal does not challenge
the weight given to Dr. Saito's opinions.  Moreover, the Smith
court believed that the ALJ based findings on lay interpretation
of the plaintiff's testimony and the raw data from individual
treatment records.  Id.  This Court has not and does not find
that the ALJ arrived at her decision by interpreting raw medical
data or offering improper lay opinions.

[6]  Plaintiff also erroneously stated that the opinions of
State Agency physicians were not referenced by the ALJ.  These
misstatements cause the Court to question how carefully Plaintiff
has reviewed the Decision and administrative record.  The ALJ
stated:  "In determining the claimant's residual functional
capacity, the undersigned has given some weight, but not full
weight to the opinions of the State agency physical medical
consultants on initial review and on reconsideration."  AR at 23.
She then discussed the respective opinions.  Id.  Because
Plaintiff does not challenge the Decision with respect to the
treatment of physician opinions, and she only mentioned the State
Agency physician opinions in her factual background section, the
Court need not address the matter.

Br. at 11.  This is plainly incorrect.  The ALJ discussed the x-ray and MRI:

> On July 9, 2012, x-rays of the lumbar spine
> demonstrated degenerative changes at L4-5 (Ex. 2F,
> p. 36, 50). . . . A magnetic resonance imaging
> (MRI) of the lumbar spine dated October 29, 2012
> showed mild degenerative changes at L3-4 and L4-5
> (Ex. 2F, p. 40, 51).  X-rays of the bilateral hips
> on March 7, 2014 demonstrated questionable
> possible very mild degenerative changes of the
> left hip (Ex. 4F, p. 304).

AR at 22.  Her references to the x-rays and MRI were limited to the objective findings as presented in the record.  She did not interpret the findings or express medical opinions; she merely recited the findings.  It is unclear how this could lead Plaintiff to believe to that the ALJ interpreted medical data or looked beyond the medical record.

Courts have upheld an ALJ's rejection of a claimant's credibility when objective medical evidence, such as MRIs and x-rays, show mild findings.  Burch, 400 F.3d at 681 (lack of medical evidence - MRI and x-rays showing only mild degenerative disc disease and mild dextroscoliosis - is a factor the ALJ can consider in his credibility analysis to discount pain testimony); Grinnell v. Colvin, No. SA CV 15-0555 JCG, 2015 WL 8783759, at *2 (C.D. Cal. Dec. 15, 2015); Remick v. Astrue, No. EDCV 09-593 JC, 2010 WL 3853081, at *4, *6, *9-10 (C.D. Cal. Sept. 29, 2010) (concluding that the ALJ properly rejected the claimant's credibility in part because objective medical evidence, including

mild MRI and x-ray findings, contradicted the claimant's alleged limitations).

The July 9, 2012 x-ray showed degenerative changes, vertebral alignment within normal limits, and no evidence of a fracture. AR at 350. The October 29, 2012 MRI yielded the following results:

> IMPRESSION: Mild degenerative changes of the lumbar spine, most pronounced at L3-4 and L4-5.
>
> . . . .
>
> FINDING: The alignment of the lumbar spine is normal. There are mild to moderate degenerative spondylotic changes; degenerative end plate changes are seen at L4/5. No fracture or destructive lesion is visible in the vertebral bodies. Diffuse discogenic disease is present, most prominent at L4/5. The conus is located at the T 12-L1 level, with no mass or compression in the peri-conal area.
>
> L1-2: Normal findings.
>
> L2-3: Normal findings.
>
> L3-4: There is mild bilateral facet hypertrophy and mild focal right posterolateral disc protrusion into the right neuroforamen, without spinal stenosis; there is mild right neuroforaminal narrowing.
>
> L4-5: There is moderate loss of disc height and broad-based posterior disc protrusion extending into and mildly narrowing the neuroforamen bilaterally, immediately adjacent to the exiting L4 nerve root, without spinal stenosis.
>
> L5-S1: There is mild bilateral facet hypertrophy and mild diffuse disc bulge, without spinal stenosis or neuroforaminal narrowing.

Id. at 354, 365. A March 7, 2014 x-ray revealed no fracture to

the pelvic ring; no significant degenerative narrowing of the hip joint space; questionable mild narrowing superior laterally of the left hip; and no fracture to the proximal femur.  Id. at 696.

Plaintiff proffers that an ALJ could reasonably assume that objective findings were not significant if they were mild or minimal.  The bulk of findings from the x-rays and MRI were normal or mild.  Thus, according to Plaintiffs argument, the ALJ could reasonably conclude that the objective findings were insignificant.  In her Reply brief, Plaintiff claims that her July 9, 2012 x-ray is not characterized.  In actuality, it reflected vertebral alignment within normal limits.[7]  Plaintiff's arguments are unavailing and the ALJ properly determined that these normal to moderate objective medical findings diminished the credibility of Plaintiff's allegations concerning the severity of her symptoms and limitations.

In any event, the ALJ did not rely exclusively on the x-ray and MRI findings to discredit Plaintiff's credibility; they were among multiple factors cited to contradict Plaintiff's subjective complaints.

c.    Other Evidence Cited by the ALJ

The ALJ's Decision included additional references to objective medical evidence that factored into the adverse

_____

[7]  At the hearing, Plaintiff's counsel argued that this is only one limit.  Evidence is not to be disregarded or diminished simply because it is disfavorable to Plaintiff.

credibility determination, such as: 1) physical examination showing "negative straight leg raise, motor strength was 5/5, sensory was intact, reflexes were symmetric in the upper and lower extremities, [Plaintiff's] gait was normal, and [she] only subjectively reported having swelling in both legs especially at the end of the day", AR at 22; 2) absence of opinion from Jill Williams, PA-C, after having Plaintiff under her care for nearly six months, "that [Plaintiff] had any functional limitations as a result of her condition" or specification regarding Plaintiff's condition, id.; and 3) State Agency physician opinions that Plaintiff "is able to perform a range of work at the light exertional level with some difference in the degree of specific function-by-function limitations". Id. at 23.

The foregoing objective medical evidence constitutes specific, clear and convincing reasons for not fully crediting Plaintiff's allegations.

    2.    <u>Daily Activities</u>

The ALJ concluded that Plaintiff's engagement in a somewhat normal level of daily activity and interaction diminished her credibility with respect to allegations of functional limitations. The ALJ reasoned that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." Id. at 21.

"[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)) (quotations omitted).  An adverse credibility determination requires daily activities that contradict a claimant's other testimony or meet the threshold for transferrable work skills.  Id.  A claimant's testimony may be discredited "when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted); Burch, 400 F.3d at 681 (stating that a claimant's allegations may be discredited "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace"); Orn, 495 F.3d at 639.  Even in cases where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1113 (citations omitted).

Here, the ALJ cited Plaintiff's ability to drive, go to the store, prepare her own meals, spend time with her family, take care of her own personal hygiene, do dishes and dusting, and serve as caretaker to her ill sister.  AR at 20.  Plaintiff argues that the ALJ disregarded her testimony that she lies

around and watches TV for most of the day and that she has three to four bad days per week, during which she spends the majority of her time in bed. Id. at 38, 46-47. The Court disagrees.

The ALJ found that notwithstanding her impairments, Plaintiff was able to engage in a somewhat normal level of daily activity and interaction based on the daily activities identified above. The ability to carry out these daily activities contradicted other testimony, such as lying around and watching TV and having three to four bad days per week. That the ALJ did not specifically address a couple of statements made by Plaintiff during her testimony does not mean those statements were disregarded. In fact, the contradiction between those statements and Plaintiff's self-reported daily activities is a clear and convincing basis to discredit her allegations of impairment. Moreover, the ALJ concluded that Plaintiff's abilities and interactions required to perform the referenced daily activities are the same as those required to obtain and maintain employment. Based on the contradiction and capacities that are transferrable to the workplace, the ALJ properly opined that Plaintiff's credibility as to her allegations of functional limitations was diminished.

3.    Treatment History

The ALJ found that Plaintiff's persistent non-participation in conservative treatment weighed strongly against

20

her credibility in alleging disability, as Plaintiff's failure to do exercises as frequently as she should and take medications regularly as instructed demonstrates an unwillingness to take necessary steps to improve her condition and indicates symptoms less severe than she purports. <u>Id.</u> at 21. Plaintiff asserts that the ALJ erred in the following respects: 1) the relevant medications were for diabetes, but the disability concerns her back and 2) the ALJ failed to address both the fact that Plaintiff cancelled her last exercise session due to illness and that Plaintiff was well motivated.

As already noted, an ALJ may rely on "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" to find a pain allegation incredible. <u>Fair</u>, 885 F.2d at 603. There may be any number of good reasons for failing to follow a course of treatment, but "a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." <u>Id.</u>

 a. <u>Medication</u>

Plaintiff contends that any failure to take medications, even if it occurred with regularity, is irrelevant because the medications were for diabetes, not back problems. The ALJ was aware, in citing Plaintiff's failure, that it related to her diabetes. The ALJ remarked that Plaintiff was diagnosed

with diabetes mellitus in 2012, and that progress notes from June 2013 indicated she did not take medications regularly as instructed. AR at 22. Although Plaintiff attempts to diminish the relevance of her diabetes and failure to take medications, Dr. Saito "assessed functional limitations that would preclude [her] from working at the level of substantial gainful activity due to lumbar spondylosis, <u>diabetes mellitus</u>, history of depression, and venous stasis." <u>Id.</u> (emphasis added). Indeed, the ALJ found, which Plaintiff does not dispute or challenge, that Plaintiff has two severe impairments: degenerative disc disease of the lumbar spine and diabetes mellitus. <u>Id.</u> at 18. As such, Plaintiff's failure to take prescribed medications, even if for diabetes and not for her back problems, undercuts her claim of disability and debilitating pain. <u>Sager v. Colvin</u>, 622 Fed. Appx. 629, 629 (9th Cir. 2015) (Sager's failure "to comply with treatment recommendations to quit smoking, take prescribed medications, have epidural injections, consistently perform a home exercise program and consider spinal cord stimulation treatment . . . undermines his claims of debilitating pain.").

     b.  <u>Exercises</u>

Plaintiff complains that while the ALJ stated that she was not doing her exercises as frequently as she should, the ALJ did not explain that she was well motivated and that she cancelled a physical therapy session due to illness. This is a

mischaracterization of the evidence. The progress notes stated that Plaintiff cancelled the previous session due to illness. AR at 472. However, the notes then stated that Plaintiff was not doing exercises as much as she should. Id. The comment about her failure to do exercises does not appear to be limited to her cancellation of a single therapy session, as the treatment included a home exercise program. Id. Plaintiff was highly encouraged to keep up with her exercises as recommended. Id. at 473. As for the purported commentary that Plaintiff was well motivated, this is an exaggeration on her part. A "yes" response was provided to "Patient understands agrees & motivated". Id. at 474. Later in the notes, "Rehab Potential (Good, poor or questionable)" was deemed to be "fair based on patient's history, motivation and goals." Id.

The Court finds disingenuous Plaintiff's argument and concludes that the ALJ properly determined that Plaintiff's failure to consistently perform a home exercise program undermined her claims of disability.

4.  Work Activity After the Onset Date

As a final basis to support an adverse credibility determination, the ALJ pointed to Plaintiff's work activity after the onset date. Plaintiff explains that she only worked for a few weeks because she was unable to continue full time employment and her employer could not accommodate her request for part time

work.

"It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment."  Lingenfelter, 504 F.3d at 1038. The mere fact that a claimant works, without more, does not necessarily provide a clear and convincing reason for an adverse credibility determination.

In this case, the ALJ did not summarily conclude that Plaintiff's work activity after the onset date warranted an adverse credibility determination.  Rather, the ALJ acknowledged that the work did not constitute disqualifying substantial gainful activity, but indicated that Plaintiff's "daily activities have, at least at times, been somewhat greater than the claimant generally reported."  AR at 21.  In other words, Plaintiff's work activity tended to demonstrate a level of activity in conflict with her claims of severe impairment. Plaintiff testified that although she could not work full time, she thought she could work part time, or wanted to try.  Id. at 45-46.  Significantly, work activity did not alone serve as the basis for rejecting Plaintiff's allegations about the severity of her symptoms.  The fact that Plaintiff was able to engage in work and other daily activities after the onset date is a clear and

convincing basis to support an adverse credibility determination. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (the ALJ properly discounted the claimant's testimony because, among other reasons, "she leads an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments . . . [and] she recently worked as a personal caregiver for two years, and has sought out other employment since then").

For the reasons set forth above, the Court concludes that the ALJ offered clear and convincing reasons for not fully crediting Plaintiff's testimony and statements. See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony when he explained that the claimant's allegations regarding symptoms were disproportionate and not supported by the objective medical findings or other corroborating evidence because she engaged in normal activities of daily living, which suggested that she may be capable of performing the demands of unskilled work on a sustained basis, and doctors' reports concluded that she could perform a limited range of work); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (holding that the ALJ's resolution between conflicting evidence - credible evidence directly contradicted how debilitating the claimant's fatigue was -

provided a clear and convincing reason to reject the claimant's subjective testimony).

The ALJ is responsible for weighing the evidence and determining credibility. <u>Andrews</u>, 53 F.3d at 1039. Based on the ALJ's reasoned assessment of the evidence, the Court will not substitute its judgment for that of the ALJ. An ALJ's credibility determinations will not be reversed based on ambiguous or contradictory evidence. <u>Johnson</u>, 60 F.3d at 1434 (citing <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984)). Thus, even if the ALJ's interpretation of Plaintiff's testimony and the evidence may not be the only reasonable one, it is nevertheless a reasonable interpretation and is supported by substantial evidence. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). As such, the Court will not second-guess it. <u>Id.</u>

B.    <u>Dr. Saito's February 12, 2016 Medical Questionnaire</u>[8]

1.    <u>The Appeals Council did not Err</u>

Plaintiff lastly argues that the Appeals Council erred by failing to consider Dr. Saito's February 12, 2016 Medical Questionnaire. To the extent Plaintiff is challenging the Appeals Council's denial, no relief can be accorded. When the Appeals Council denies a request for review of an ALJ's decision, district courts lack jurisdiction to review the Appeals Council's

---

[8]    Plaintiff refers to the document as a "report".

decision because it is a non-final agency action.  <u>Brewes v.</u>

<u>Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1161 (9th Cir. 2012)

(citing <u>Taylor v. Comm'r of Soc. Sec. Admin.</u>, 659 F.3d 1228, 1231

(9th Cir. 2011)).

      Plaintiff concedes that Dr. Saito's questionnaire was

admitted into evidence, but postulates that the Appeals Council's

failure to expressly state that it was considered necessarily

means that it did not do so.  The Court disagrees.

      The Order of Appeals Council states:

> The Appeals Council has received additional
> evidence <u>which it is making part of the record</u>.
> That evidence consists of the following exhibits:

> Exhibit 18E    Representative Brief dated December
>                  16, 2014 (3 pages)

> Exhibit 8F     Medical Questionnaire and
>                 supporting documents (Coswin Saito,
>                 M.D[.]) dated July 10, 2012 to
>                 February 12, 2016 (5 pages)

AR at 5 (emphasis added).  In the Notice of Appeals Council

Action, under the heading "What We Considered", the Appeals

Council stated:  "We considered whether the Administrative Law

Judge's action, finding, or conclusion is contrary to the weight

of the <u>evidence of record</u>.  We found that this information does

not provide a basis for changing the Administrative Law Judge's

decision."  <u>Id.</u> at 2 (emphasis added).  While the Appeals Council

did not expressly reference Dr. Saito's February 2016

questionnaire in the "What We Considered" section, the only

logical conclusion to be drawn is that the Appeals Council considered it because it was part of the evidence of record. Accepting Plaintiff's position requires the Court to speculate and make inferences that are inconsistent with the plain language of the Appeals Council's Order and Notice of Action. The Court therefore rejects Plaintiff's argument that the Appeals Council erred by failing to consider Dr. Saito's questionnaire.[9]

    2.   <u>Dr. Saito's Medical Questionnaire Does not Support Reversal of the ALJ's Decision</u>

Because Dr. Saito's questionnaire was part of the evidentiary record before the Appeals Council, it is part of the administrative record. <u>Brewes</u>, 682 F.3d at 1163 (holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence"). Dr. Saito's questionnaire does not undermine the ALJ's decision, however, nor does it change the outcome of these proceedings.

When asked whether Plaintiff's ability to work improved since he last reported on July 15, 2014, Dr. Saito circled "no". AR at 705. Dr. Saito also circled "no" when queried whether

---

[9]   Had the Appeals Council failed to consider Dr. Saito's questionnaire, remand to the ALJ would be "appropriate so that the ALJ can reconsider its decision in light of the additional evidence." <u>Taylor</u>, 659 F.3d at 1233.

surgery was possible to handle Plaintiff's condition and whether
more aggressive treatments would help.  Id.  In response to a
request to list objective findings that support Plaintiff's
subjective complaints, Dr. Saito attached the July 9, 2012 x-ray
and the October 29, 2012 MRI results.  Id. at 706.  The last
question sought an opinion about whether Plaintiff was
straightforward and honest in relating her complaints.  Id.  Dr.
Saito responded in the affirmative, but did not provide an
explanation as requested.  Id.

Dr. Saito's responses, which are consistent with his
earlier findings, do not change the Court's reasoning as detailed
above.  Dr. Saito opined that Plaintiff's ability to work did not
improve since last reported in 2014, but the ALJ offered specific
reasons why she gave little weight to his opinions from 2014 and
2012.[10]  Id. at 22.  With respect to the clarification that
surgery was inappropriate and more aggressive treatment
unavailable, the Court has already addressed this issue and
determined that the ALJ properly relied upon Plaintiff's
conservative course of treatment as a basis for her adverse
credibility determination.  Even if this Court found that such
reliance was erroneous in view of the questionnaire, multiple
other bases support the adverse credibility determination.

---

[10]  And, as already pointed out, Plaintiff does not
challenge the evaluation of the Dr. Saito's 2012 and 2014
opinions in this appeal.

The x-ray and MRI results that are attached to the questionnaire were considered by the ALJ and found to contradict Plaintiff's subjective complaints. That Dr. Saito has expressly pointed to them as objective findings supporting Plaintiff's subjective complaints does not require this Court to concur. The Court found proper the ALJ's determination that the objective medical evidence, such as the x-ray and MRI findings, contradicted Plaintiff's allegations. Finally, Dr. Saito's affirmation of Plaintiff's credibility has no bearing here. Credibility determinations are the province of the ALJ, not Dr. Saito. Fair, 885 F.2d at 604. For these reasons, the questionnaire does not change the fact that the ALJ's Decision is supported by substantial evidence.

In sum, the Court concludes that the ALJ's Decision should be affirmed because 1) the ALJ provided clear and convincing reasons for not fully crediting Plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms and 2) the ALJ's finding of "not disabled" is supported by substantial evidence. Even if the record, taken as a whole, could also support a reversal, the Decision must nevertheless be affirmed because the Court may not substitute its judgment for that of the ALJ. Hiler, 687 F.3d at 1211; Matney, 981 F.2d at 1018.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court HEREBY AFFIRMS the ALJ's Decision.

IT IS SO ORDERED.

DATED:   Honolulu, Hawaii, September 8, 2017.



_____
Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 16-00397 KSC; <u>FRIERSON V. BERRYHILL</u>; ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE